UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL WILLIAMS

        Petitioner,                          Civil No. 11-1837 (SRN/JSM)

    v.

JESSICA BENSON, Warden                   **REPORT AND**
                                      **RECOMMENDATION**

        Respondent.

JANIE S. MAYERON, U.S. Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge on Petitioner's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 3]; Petitioner's Motion Directing the Respondents to Stop Interfering with Petitioner Submitting Legal Documents [Docket No. 10]; and Petitioner's Motion for Appointment of Counsel [Docket No. 11].   The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    BACKGROUND

Petitioner is a currently a prisoner at the Minnesota Correctional Facility at Oak-Park Heights Lakes ("MCF-OPH").   On March 6, 1997, Petitioner was committed to the custody of the Commissioner of Corrections for a 268-month sentence related to his conviction for First Degree Criminal Sexual Conduct.   See Affidavit of Krista Fink ("Fink Aff."), App. A.3.   Based on his sentence, Petitioner's supervised release date is currently scheduled as January 22, 2013, not including any extensions based on disciplinary infractions.   Id.

On April 20, 2009, Petitioner was charged with violating the following Minnesota

Department of Corrections' Offender Discipline Regulations: 300 ABUSE/HARASSMENT; 310 THREATENING OTHERS; and 320 DISORDERLY CONDUCT.  Id., App. A.11.

The charges were based on the written report of Officer Ryan Schill stating the following:

> On the above date and time, I, Officer Ryan Schill was monitoring the food line with Officer Nuehring in Complex 2. At this time, Officer Nuehring went over to inform Offender Williams, Michael #190665 that he could not go through the food line because he had a diet tray. Offender Williams then stated, "still get seconds though." Officer Nuehring told the Offender no he did not. The offender started to disagree with Officer Nuehring.  Officer Nuehring then brought Offender Williams to the bubble to show him the rule that was in question. Once Officer Nuehring and Offender Williams were done at the bubble I observed Offender Williams walk to the juice table. Offender Williams began to converse with Offender Edwards, Anthony #197332. As the two offenders were walking away from the juice table, I heard Offender Williams state to Offender Edwards "That CO needs an ass whooping". Offender Edwards replied "Yup sure does. I won't be happy until he gets one." Both offenders went to their rooms and it was at this time that Officer Nuehring informed Bubble Officer Rachel Culver of the situation. Both offenders were placed on I.R. and Watch Commander Lt Hell was notified.

Id.

On April 28, 2009, a hearing officer determined that Petitioner was guilty of all of the charges.  Id., App. A.12.  Petitioner was sentenced to 45 days of segregation for the finding of guilty as to Abuse/Harassment charge, and 45 days of segregation, along with 30 days of extended incarceration, for the finding of guilty as to the Threatening Others charge.  Id.  The disorderly conduct charge was dismissed.  Id.  The finding of guilt for these two charges was based on the testimony of Officer Schill regarding his observations, as well as the testimony from him on cross-examination by Petitioner.  Id., App. A.13. The hearing officer also considered a written statement from Petitioner that he was referring to another offender when he stated that someone needed an "ass whooping,"

which was corroborated by Offender Edwards; and a restraining order he attempted to take out against Officer Nuehring.   Id.

On May 27, 2009, a discipline hearing appeal was held.   Id., App. A.14.   Petitioner alleged that Officer Nuehring was stalking him and trying to establish a fake history of personal grudges, and that he was not given a fair hearing because the hearing officers were Minnesota Department of Correction ("MDOC") employees, which violated his right to a fair hearing.   Id.   The Warden, Jessica Symmes, denied the appeal, finding as follows:

> The subject's argument that the reporting officer is somehow "stalking" him is quite absurd.  Clearly the reporting officer, just like any other corrections officer that works in a correctional facility, and living unit, is going to be in close proximity to offenders, monitor their behavior, and enforce the department's rules. That's what their job is, and in this case, the reporting officer was simply doing his job.
>
> As for the subject's apparent "Equal Protection" argument about the Hearing Officer not being impartial and also using his past history against him; DOC policy, along with state and federal law, have thus far, upheld the Departments Due Process procedures, including the use of DOC and facility staff as· Hearing Officers for major as well as minor hearings (minor hearings are conducted by facility staff). The finding does meet the "preponderance of evidence" standard. And yes, just like in sentencing with the courts, an offender's past record can be considered when imposing sanctions/penalties.

Id.

In December 2009, Petitioner filed a petition for writ of habeas corpus in Washington County District Court in the State of Minnesota, pursuant to Minn. Stat. § 589.01.   See Petitioner Exhibit 6 [Docket No. 3-1], pp. 6-8 of 53.   Petitioner alleged that he did not have adequate assistance with regards to preparing his defense against the disciplinary action; the hearing officer was not impartial as evidenced by the fact that he

cut Petitioner off, told Petitioner that he could not cross-examine the officer about falsifying his report, referred to Petitioner's documentary evidence as frivolous, typed the hearing findings from the testimony of the reporting officer, distorted statements during the hearing, and never deliberated before making a decision of guilt; his conviction was not supported by any evidence; the tape recorded testimonies of the hearing were destroyed; and the use of MDOC employees as hearing officers violated his right to a fair hearing. Id., pp. 6-8 of 53.

On January 13, 2010, the Washington County Court denied Petitioner in forma pauperis ("IFP") status on the basis that the state habeas action was frivolous or malicious because it had no arguable basis in law or fact, and dismissed the action with prejudice. See Fink Aff., App. B.31-32.  Petitioner filed a Motion for a New Trial and an Amended Petition for Writ of Habeas Corpus, which included, in part, an assertion that MDOC prevented him from submitting a memorandum and affidavit in support of his initial state petition for writ of habeas corpus.  Id., App. B.33-38.  The district court denied the motion, explaining that Petitioner's claim that the MDOC prevented him from submitting a memorandum and affidavit was "wholly unsubstantiated," Petitioner had not provided any evidence to support his habeas petition, and Petitioner never included the memorandum referenced by him in support of his motion.  Id., App. B.39-40.

Petitioner appealed the district court's decision to the Minnesota Court of Appeals. In his brief to appellate court, Petitioner alleged the following: (1) the district court abused its discretion in dismissing the IFP action as frivolous; (2) he complied with the MDOC's exhaustion requirements; (3) his claims had a reasonable basis in law and fact and were supported by a good faith argument; (4) his right to an impartial hearing officer was denied; (5) citing to Wolff v. McDonnell, 418 U.S. 539 (1974), his right to staff assistance was

denied; (6) his right to be convicted by the preponderance of the evidence was violated; (7) his right to due process was violated because the MDOC destroyed the audio tape of the hearing; and (8) his constitutional right to access to the courts was denied because staff reduced his library time while he was preparing his petition.   Id., App. B. 65-72.

The Minnesota Court of Appeals rejected all of Petitioner's arguments, and affirmed the extension of his supervised release date.   See Williams v. Minnesota Dept. of Corrections, NO. A10-448, 2010 WL 3397110 (Minn. Ct, App. Aug, 31, 2010).   The court found:

> The Commissioner of Corrections has broad statutory authority to determine offenders' place of confinement and to "prescribe reasonable conditions and rules for their employment, conduct, instruction, and discipline within or outside the [correction] facility." Minn. Stat. § 241.01, subd. 3a(b) (2008). The legislature has also established that the commissioner may extend an inmate's term of imprisonment for violating disciplinary rules. Minn. Stat. § 244.05, subd. 1b (2008). But an inmate has a protected liberty interest in avoiding an extension of his supervised-release date. Johnson v. Fabian, 735 N.W.2d 295, 302 (Minn.2007). Therefore, a prisoner must receive procedural due process before the DOC can extend that date. Carrillo v. Fabian, 701 N.W.2d 763, 773 (Minn.2005).
>
> Appellant argues that he was denied procedural due process because DOC staff (1) failed to assist him in obtaining evidence for his hearing; (2) prematurely destroyed recorded testimony from his discipline hearing in violation of DOC policy; and (3) failed to speak with an unnamed alleged inmate witness and perform further investigation at appellant's direction. But appellant failed to present the district court with the documents that might support the allegations in his habeas corpus petition, such as the hearing officer's report, documents he may have filed with the DOC's discipline unit in this matter, the rule he was found guilty of violating, or any responses he received from DOC staff. We recognize that habeas petitions are the only means inmates have to obtain judicial review of prison sanctions and, therefore, we discourage district courts from summarily denying such petitions as frivolous at an early stage. But without any

evidence supporting his claims, appellant's allegations amount to mere argumentative assertions without factual support. See State v. Manley, 664 N.W.2d 275, 286 (Minn. 2003) (declining to consider portions of pro se brief that included only argument and were unsupported in the trial record). Accordingly, the district court did not abuse its discretion by denying appellant's motion to proceed in forma pauperis and dismissing with prejudice his challenge to the DOC's extension of his supervised-released date.

Id. at *2.

Petitioner sought further review by the Minnesota Supreme Court. Petitioner argued that he failed to present documents in support of his state habeas corpus action because the respondents "blocked him from filing his memorandum of law, affidavit and exhibits." See Fink Aff., App. B.9. According to Petitioner, these actions violated his right of access to the courts. Id. (citing Lewis v. Casey, 518 U.S. 343, 355 (1996)). Petitioner asserted that in December 2009, he was authorized to use the prison law library for two hours, four days a week, but then the MDOC abruptly employees reduced his law library time to twenty minutes a day and told him that if he needed more time, he would need to produce a court document showing a deadline. Id., App. B.10. Because of his lack of typing skills and the decrease in his time to complete his petition and perform additional research, Petitioner asserted he was hindered from filing his petition on December 28, 2009.[1] As a result, the district court dismissed his petition as frivolous because the action had no basis in law or fact and the Minnesota Court of Appeals determined he had failed to present the district court with the documents that might

---

[1]  This Court fails to understand the significance of the December 28, 2009 filing date. According to Respondent, there is no time limit by which a state habeas petition must be filed. See Respondent's Answer to Petition for Writ of Habeas [Docket No. 8] ("Resp. Answer"), p. 6 (citing Minn. Stat. § 589.01). Respondent is correct. Presumably, Petitioner could have waited to file his Petition until he completed all of the necessary research and preparation of his memorandum.

support the allegations in his habeas corpus petition. Id. Petitioner claimed that the district court should not have dismissed his state petition, where the United States Supreme Court has held that a "'pro se plaintiff's complaint should not be dismissed for failure to state a claim upon which relief could be granted if it appears he may be able to offer proof of his claim.'" Id. (quoting Haines v. Kerner, 404 U.S. 519 (1972)). Petitioner submitted that his state petition properly stated the facts underlying the case, the petition was not barred by any defense, and the Fourteenth Amendment claim alleged in the petition was viable as a matter of law. Id., App. B.10-11. Petitioner also argued that in the interests of justice, the trial court should have granted his motion to correct or modify the record with appendix 1-60 because he was blocked from making the documents part of the record at the district court level. Id., App. B.11.

Petitioner's request for further review was denied by the Minnesota Supreme Court on October 28, 2009. Id., App. B.1.

Petitioner did not file a new habeas petition in state court. Instead, he filed the instant habeas corpus petition. In that Petition, Petitioner presented the following grounds:

> Ground One: The prison staff assigned to assist petitioner, deprived him procedural due process by failing to assist petitioner in presenting and preparing his defense.
>
> Ground Two: The hearing officer's actions conducting petitioner's hearing, deprived him of procedural due process by failing to provide an impartial fact finder.
>
> Ground Three: The disciplinary convictions of Abuse/Harassment, and two counts of Threatening Others is not supported by any evidence, deprive petitioner of due process by failing to convict him by the preponderance of evidence.
>
> Ground Four: The prison discipline staff destruction of the

audiotape recording proceedings of the hearing, deprived petitioner of due process to the original record.

Ground Five:  Minnesota d.o.c. [sic] employee as hearing officers deprived petitioner of due process to a "neutral and detached"' fact-finder."

Ground Six:  The state court decision was based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings.

Amended Petition for Writ of Habeas Corpus 28 U.S.C. § 2254 [Docket No. 3], pp. 5-7.

Petitioner alleged that Respondent's actions violated his right to procedural due process under the Fourteenth Amendment.  Id., p. 8.  For relief, Petitioner sought an evidentiary hearing and restoration of the 30 days of extended incarceration.  Id.

In response to the Amended Petition, Respondent argued that the Petition should dismissed with prejudice because Petitioner failed to exhaust his state remedies regarding his federal law claims.  See Resp. Answer, pp. 2, 5-7.  Specifically, Respondent submitted that Petitioner's claims were never adjudicated on the merits and it has had no opportunity to substantively address the claims.  Id., p. 2.  According to Respondent, unlike the law governing federal habeas petitions, there is no statute of limitations period or a bar to filing successive habeas petitions under Minnesota law, and Petitioner has not shown that he was precluded from returning to state courts to seek relief.  Id., pp. 2, 6-7. In the alternative, Respondent claimed that Petitioner failed to adequately demonstrate a violation to his right to procedural due process.  Id., pp. 7-11.

In reply, Petitioner argued he properly presented all of his claims to the Minnesota state courts.  See Answer to Return [Docket No. 14], p. 1.  According to Petitioner, the state courts unreasonably determined that his action was frivolous, which precluded his claims from being heard and resulting in a "complete miscarriage of justice."  Id.

Petitioner also argued that the record supported his claims of constitutional violations, and the Court should not heed Respondent's attempts to assassinate his character, especially in light of the alleged bad acts by MDOC staff.   Id., p. 2.

## II.   DISCUSSION

28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;   or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.   Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;   or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, while Petitioner does not explicitly state whether he was proceeding under 28 U.S.C. § 2254(d)(1) or (2), it is evident from the substance of his Amended Petition that he is raising challenges under both § 2254(d)(1) and (2).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

> A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006).   Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances."   May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).[2]

---

[2]   By its terms, it is important to remember that § 2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision to 'clearly

Under § 2254(d)(2), a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings," only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.   28 U.S.C. § 2254(e)(1).   Pursuant to § 2254(e)(1):

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

## A.   Exhaustion of Remedies

The Court first examines Respondent's contention that Petitioner's suit must be dismissed because he failed to exhaust his state court remedies.

Before a petitioner may present claims in a federal habeas petition, he must first exhaust his state court remedies; he "does so by fairly presenting his federal constitutional claims to the highest available state court." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45

---

established Federal law, as determined by the Supreme Court of the United States.'" O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1999), *overruled on other grounds*. Thus, even if lower federal court decisions support Petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence." Id. Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25) ("If no Supreme Court precedent is dispositive of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.' In such circumstances, a federal habeas court then determines whether the state court decision reflects an unreasonable application of clearly established Supreme Court jurisprudence. This reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable. To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue.").

(1999).   A claim is unexhausted if the claim has not been fairly presented in one complete round of the State's established appellate review process, (Id. at 845), but the petitioner has the right, under state law, to raise the claim by any available procedure.   See 28 U.S.C. § 2254(c).

While exhaustion in state habeas cases is generally required, the exhaustion prerequisite for filing a habeas petition is not jurisdictional, and this Court may decide to proceed to address the merits of a state habeas petition without regard to the question of exhaustion.   See 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Tokar v. Bowersox, 198 F.3d 1039, 1049 (8th Cir. 1999) ("[s]ince we find the issue can be easily resolved on the merits, we need not delve into all of [the petitioner's] excuses for his procedural default"), cert. denied, 531 U.S. 886 (2000); Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir.) (confirming that procedural default is not a jurisdictional bar to review of a habeas claim, and addressing petitioner's apparently defaulted claim on the merits "in the interest of judicial economy"), cert. denied, 549 U.S. 1034 (2006).

Because this Court has concluded that Petitioner's habeas petition fails on the merits, it does not need to address whether he properly exhausted his state court remedies.

**B.**   **The Merits of Petitioner's Claims**

Each ground asserted by Petitioner is premised on the theory that the hearing conducted by the prison or actions following the hearing did not comport with the requirements of procedural due process afforded inmates pursuant to the Fourteenth Amendment of the Constitution.   "To prevail on a Fourteenth Amendment due process

claim, [a plaintiff] must first demonstrate that he was deprived of life, liberty or property by government action." Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting Phillips v. Norris, 320 F.3d 844, 846 (8th Cir. 2003)); see also Wilkinson v. Austin, 545 U.S. 209, 221 (2003) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' … or it may arise from an expectation or interest created by state laws or policies.") (citations omitted)). "This analysis as to liberty parallels the accepted due process analysis as to property." Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). Once a deprivation of a protected interest is established, "the next question is what process is due." See Williams v. Norris, 277 Fed. Appx. 647, 648-49 (8th Cir. 2008) (citing Wilkinson, 545 U.S. at 224).

To satisfy the procedural due process requirements for prison discipline, Petitioner was entitled:

> (1) to advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) to call witnesses and to present documentary evidence in his defense if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action.

Hrbek v. Nix, 12 F.3d 777, 780–81 (8th Cir. 1993) (citing Wolff, 418 U.S. at 563–67); see also Allen v. Reese, 52 Fed. Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied where he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (ii) a written report of the DHO's decision), cert. denied, 540 U.S. 849 (2003)).

Due process also requires that there must be "some evidence" supporting the disciplinary determination.   Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985); see also Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[w]hen inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record").   The "some evidence standard" is satisfied if:

> "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106 (1927)].   Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.   Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-56 (emphasis added); Goff v. Dailey, 991 F.2d 1437, 1442 (8th Cir.) (due process is satisfied if disciplinary committee based its decision on "some evidence" in record), cert. denied, 510 U.S. 997 (1993).

With these standards in mind, the Court will proceed to address the merits of each ground in the Amended Petition.

### Ground One

In Ground One, Petitioner asserted that the prison staff assigned to help him, deprived him of procedural due process by failing to assist him in presenting and preparing his defense.   See Amended Petition, ¶ 24.   Petitioner claimed that he was in segregation and could not get access to witnesses or view the videotape surveillance of the incident. Id.

It is undisputed that an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."[3] <u>Wolff</u>, 418 U.S. at 566.   However, a prisoner only has a constitutional right to assistance in collecting and presenting evidence for a disciplinary hearing when the prisoner is illiterate or the complexity of the issues makes it unlikely that the prisoner will be able to collect and present the necessary evidence.   <u>Id.</u> at 570.

Here, Petitioner is not illiterate and there is nothing complex about a case involving threats overheard by a prison officer so as to afford Petitioner a constitutional right to assistance in obtaining evidence.   Therefore, the Court finds that Petitioner's contention that he was deprived of procedural due process because he was not provided with any assistance in obtaining evidence was neither contrary to, nor did it involve an unreasonable application of the decisions of the United States Supreme Court.[4]

---

[3]     To the extent that Petitioner was in segregation due to the threats he made, it is clear that both institutional safety and correctional goals would have been compromised had he been allowed out of segregation to collect evidence for his hearing.

[4]     If Petitioner is arguing that he is entitled to habeas relief solely on the basis that Respondent did not follow Minnesota state prison regulations (including hearing procedural requirements under MDOC 303.010), then those claims are also rejected. The United States Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991); <u>see</u> <u>also</u> <u>Wainwright v. Goode</u>, 464 U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension"); <u>Kennedy v. Blankenship</u>, 100 F.3d 640, 643 (8th Cir. 1996)   ("[T]he Due Process Clause does not federalize state-law procedural requirements."); <u>Hughes v. Lee County District Court, Fort Madison, Iowa</u>, 9 F.3d 1366, 1367 (8th Cir. 1993) (dismissing a petition for a writ of habeas corpus when inmate argued that the state violated its own procedural guidelines for disciplinary hearings but conformed to the measures set out in <u>Wolff</u> and its progeny).

### Ground Two

In Ground Two, Petitioner claimed that his right to due process was violated because the hearing officer was not an impartial fact-finder.   See Amended Petition, ¶ 25. In support, Petitioner maintained that the hearing officer told him he did not have a right to staff assistance; denied any issue Petitioner raised by characterizing the issue as a motion or mocked Petitioner when he informed the hearing officer that he was not making a motion; in violation of prison regulations, refused to allow Petitioner to cross-examine Officer Schill about misrepresentations he made regarding Petitioner receiving a diet-tray; stated that Petitioner's documents were frivolous; typed his findings during direct and cross-examination; found Petitioner guilty without deliberating; and distorted the hearing findings to support the finding of guilt.   Id.

"[A]n impartial decisionmaker is a fundamental requirement of due process. . . ." Wolff, 418 U.S. at 592 (Marshall and Brennan concurring in part and dissenting in part) (citations omitted).   This Court has already determined that Petitioner has no constitutional right to assistance, except in certain circumstances that do not apply here. Further, Petitioner's assertion that the hearing officer labeled the issues Petitioner raised as motions and denied those motions does not suggest that the hearing officer was biased.   Additionally, Petitioner's claim that the hearing officer did not allow him to question Officer Schill about lies in his report that Petitioner had received a diet tray on the date in question, has no bearing on this case where Petitioner admitted that Officer Nuehring stated he had a diet tray on the date in question and Officer Schill merely witnessed the altercation.   See Funk Aff., App.B.99, ¶ 3.   As for the hearing officer characterizing the documentary evidence Petitioner submitted as frivolous, the only evidence that this Court can discern that might relate to this claim is a request for a

restraining order against Officer Nuehring and a 2005 letter to the Minnesota legislature regarding abuses in prison.   Id., App. A.13.   This evidence has no bearing on whether Petitioner threatened Officer Nuehring on the day in question.

In addition, the fact that the hearing officer typed his findings during the hearing, made a decision of guilt during Petitioner's closing remarks, and gave the appearance that he never deliberated before finding Petitioner guilty, even if true, does not implicate his procedural due process rights.   So long as Petitioner was able to present his side of the story and present evidence prior to the finding of guilt, as was the case here, his right to procedural process was met.   See Wolff, 418 U.S. at 566 (due process afforded when inmate had an opportunity to "call witnesses and present documentary evidence in [the inmate's] defense.").

Finally, Petitioner presented no evidence to support his assertion that the hearing officer distorted the hearing findings to support his finding of guilt.

This Court recognizes that Petitioner does not believe he received a fair hearing because the hearing officer rejected Petitioner's view of the case.   But the evidence before this Court does not support the conclusion that hearing officer was biased or partial.

Where as here, the hearing was conducted in a manner that was neither contrary to, nor an unreasonable application of the decisions of the United States Supreme Court, the Court finds that Ground Two has no merit and should be dismissed.

### Ground Three

In Ground Three, Petitioner claimed that the disciplinary convictions of Abuse/Harassment, and the two counts of Threatening Others were not supported by any evidence, and deprived him of due process by failing to convict him by the preponderance of evidence.   See Amended Petition, ¶ 26.   Petitioner based this claim on his assertion

that he was threatening another inmate and not an officer and that the officers lied about Petitioner receiving a diet tray, which he asserted was corroborated by the surveillance recording.

As stated above, due process requirements are satisfied if some evidence--that is, any evidence in the record--supports the disciplinary decision.   See Hill, 472 U.S. at 455; see also Rudd v. Sargent, 866 F.2d 260, 262 (8th Cir. 1989) (per curiam) (citation omitted) (statements in prison officer's written disciplinary report of alleged sexual assault reciting victim's statements constituted "some evidence" to support rule violation even though officer did not witness violation); Brown v. Frey, 807 F.2d 1407, 1414 (8th Cir. 1986) ("There is some evidence in the record to support the adjustment board's finding that Brown committed "riot." For example, the joint memorandum prepared by Officers Kemp, Brown, and Lewis identifies Brown as one of the persons that encouraged the inmates to remain in the hall. Hill dictates that our inquiry should stop here. We need not examine the entire record, assess the credibility of witnesses, or weigh the evidence; this joint memorandum by itself could support the conclusion reached by the adjustment board.").

Officer Schill's report regarding the incident involving Petitioner was previously set forth in full.   See Section I, supra. (quoting Fink Aff. A-11).   In addition to his written report, during the disciplinary hearing, Officer Schill testified that he overheard the conversation between Petitioner and Offender Edwards that followed Petitioner's conversation with Officer Nuehring, at which time Petitioner stated in a loud voice "[t]hat CO needs an ass whooping," and Offender Edwards replied "[y]up sure does. I won't be happy until he gets one."   Id., App. A.13.   On cross-examination, Office Schill testified that the report he wrote was true and correct and recounted the events as prompted by the Petitioner.   Id.

18

Petitioner wants this Court to ignore this evidence and accept his version of what occurred. This the Court cannot do. Likewise, while Petitioner believes his "facts" should prevail, that it is not the test. The test is whether the disciplinary decision is supported by "some evidence." The written statement, testimony and cross-examination of Officer Schill regarding Petitioner's threat to Officer Nuehring provided more than "some evidence" to support the violations for which he was convicted. As such, the Court concludes that decision by the hearing officer was not based on an unreasonable determination of the facts in light of the evidence presented in the hearing and Ground Three should be dismissed.

**Ground Four**

In Ground Four of the Petition, Petitioner claimed that the prison staff's destruction of the audiotape recording of the hearing proceedings deprived him of due process. See Amended Petition, ¶ 27.

While an inmate has a due process right to a written statement of findings by a hearing officer in conjunction a disciplinary hearing, there is no constitutional right to an audio recording or transcript of the disciplinary hearing. See Stanko v. Rios, Civ. No. 08-3102 (JNE/JJG), 2009 WL 1066021 at *8 (D. Minn. April 20, 2009) (citations omitted) ("Though due process only requires that Stanko receive a written statement of findings by the hearing officer, Stanko also contends that he has a right to an audio recording or transcript of the disciplinary hearing. No such right is recognized and this argument is without merit.").

Consequently, even if the recorded testimony of Petitioner's hearing was destroyed, there is no due process violation, particularly where he was provided with the hearing officer's written findings. See Petitioner Exhibits 1, 2.

Therefore, the Court destruction of the hearing tape was neither contrary to, nor did it involve an unreasonable application of the decisions of the United States Supreme Court.   Ground Four should be dismissed.

### Ground Five

In Ground Five, Petitioner asserted that using MDOC employees as hearing officers deprived him of due process to a "neutral and detached" fact-finder.   See Amended Petition, ¶ 28.

The fact that a hearing officer is a prisoner official is not enough to set forth a viable claim for a deprivation of due process claim based on an allegation of a bias where the disciplinary hearing officer was not involved with the underlying incident.   See Piggie v. Cotton, 342 F.3d 660, 666-67 (7th Cir.), cert. denied, 540 U.S. 1114 (2004) (noting that adjudicators in the prison disciplinary setting are entitled to a "presumption of honesty and integrity," and the constitutional standard for impermissible bias is high, but that due process is violated when officials who are directly or substantially involved in the factual events underlying the disciplinary charges also serve as a decision maker).

As Justice Marshall explained in Wolff:

> there is no constitutional impediment to a disciplinary board composed of responsible prison officials like those on the Adjustment Committee here. While it might well be desirable to have persons from outside the prison system sitting any possibility that subtle institutional pressures may affect the outcome of disciplinary pressures may effect the outcome of disciplinary may affect the outcome of disciplinary cases and to avoid any appearance of unfairness, in my view due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case.

418 U.S. at 592 (Marshall and Brennan concurring in part and dissenting in part) (citations

omitted); see also McMaster v. Pung, 984 F.2d 948, 952 (8th Cir. 1993) (finding no factual

basis for inmate's claim of bias, as no hearing officer involved in underlying event).

Petitioner provided no evidence that the hearing officer was involved with the

incident pertaining to his alleged threats to Officer Nuehring.   Accordingly, this Court finds

that use of a MDOC employee as the hearing officer for Petitioner's disciplinary hearing, in

of itself, does not amount to a violation of his right to due process.

In short, the use of MDOC employees as hearing officers, without more, was

neither contrary to, nor did it involve an unreasonable application of the decisions of the

United States Supreme Court.   Petitioner's claim on this basis should be dismissed.

### Ground Six

In Ground Six, Petitioner asserted that the state court's decision was based on an

unreasonable determination of facts in light of the evidence presented in the state court

proceedings.   See Amended Petition, ¶ 29.   The factual basis for this claim was as

follows:

> January 13, 2010, two weeks after petitioner [sic] petition was
> filed, the state court dismissed petitioner's application to
> proceed in forma pauperis, and action with prejudice as
> frivolous, because it was no arguable basis in law or fact.
> For the first time on appeal the court held petitioner failed to
> present supportive documentation into the record.   However,
> the court did not provide the petitioner with any time or chance
> to submit supportive documentation.   But still, the documents
> the state courts is referring to is detailed in petitioner's verified
> habeas corpus petition.   Exhibits 6, 7, and 8.   Which is all
> Petitioner need to support a prima facie showing of a
> constitutional violation.   Minnesota state court abused its
> discretion in failing to grant petitioner a hearing and habeas
> corpus relief.

Id.

As set forth above, Petitioner asserted that all the evidentiary support he needed to

assert a viable procedural due process claim was contained in his Exhibits 6, 7, and 8. These exhibits constitute his state habeas petition, which are essentially the same claims he made in Grounds One through Five of the Amended Petition.   See Petitioner's Exhibits 6, 7, 8.   Given that this Court has determined that Grounds One through Five lack merit, the Court concludes the decisions pertaining to the dismissal of his state habeas petition were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   As for the state court's refusal to allow Petitioner to submit supporting materials in order to bolster his Petition after the deadline to do so, Petitioner has not pointed this Court to any documents the state court should have considered and has not set forth any evidence or argument showing that these materials would have aided him or allowed him to prevail on the claims asserted in his state habeas petition.

For all of these reasons, Ground 6 of the Petition should be dismissed.[5]

---

[5]   In his request for relief as part of his Amended Petition, Petitioner asked for an evidentiary hearing.   See Amended Petition, p. 8.   Petitioner offered no basis for a hearing.   Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for

### III. MOTION DIRECTING THE RESPONDENTS TO STOP INTERFERING WITH PETITIONER SUBMITTING LEGAL DOCUMENTS

Petitioner has asked that this Court to order Respondent to stop interfering with his ability to submit legal pleadings to the Court.   See Petitioner's Motion Directing the Respondents to Stop Interfering with Petitioner Submitting Legal Documents [Docket No. 10], p. 1.   The document Petitioner claims was withheld by Respondent was the Habeas Corpus Answer to Return, which he claims was placed in the mail on August 31, 2011.   Id. Petitioner was able to file an Answer to the Return of September 26, 2011 [Docket No. 14], which has been considered by this Court.   Therefore, his request for relief should be denied as moot.

### IV. MOTION FOR APPOINTMENT OF COUNSEL

Petitioner moves for appointment of counsel to assist him in his case because his cause of action is complex; he does not have physical access to the prison's law library; the law librarians cannot give legal advice or assist him in preparing materials; the law library clerk does not have sufficient experience; prison officials read and withheld his legal materials; he has been placed into an administrative control unit ("ACU") based another disciplinary action involving allegedly assaulting an officer; and has not been given access to his legal materials since being placed in the ACU.   See Motion for Appointment of Counsel [Docket No. 11], pp. 1-2.

---

constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254

The Court cannot hold an evidentiary hearing unless a petitioner has made the requisite showing under 28 U.S.C. § 2254(e)(2)(A) and (B). Petitioner's conclusory request for an evidentiary hearing does not suffice.  For this reason, the Court denies Petitioner's request for a hearing.

"A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998) (citations omitted); see also McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997); Wiggens v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985).   However, under 28 U.S.C. § 1915(e)(1), this Court may request counsel to represent a pro se litigant who has been granted in forma pauperis status in a civil case.[6]   The decision to appoint counsel in civil cases "is committed to the discretion of the trial court." McCall, 114 F.3d at 756 (citing Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987); Williams v. Missouri, 640 F.2d 140, 144 (8th Cir. 1981)); see also In re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986) (citations omitted).

Central to the exercise of the court's discretion to appoint counsel in a civil case is a determination by the court "that the nature of the litigation is such that the plaintiff as well as the court will benefit from the assistance of counsel." Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1005 (8th Cir. 1984); see also Plummer v. Grimes, 87 F.3d 1032, 1033 (8th Cir. 1996) (concluding that a "district court is to decide whether the plaintiff and the court will substantially benefit from the appointment of counsel").   In exercising this discretion, the court must carefully weigh the "factual and legal complexity of the case, and the petitioner's ability both to investigate and to articulate his claims without court appointed counsel." McCall v. Bensen, 114 F.3d 754, 756 (8th Cir. 1997) (citations omitted); see also Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996) (concluding there are

---

[6]      The Court's only authority under § 1915(e)(1) is that   it "may request an attorney to represent any person unable to afford counsel. 28 U.S.C. § 1915(e)(1) (emphasis added). There is nothing under the plain language of the statute that gives this Court the authority to require counsel to represent a party against his or her will.   See Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 309 (1989) (holding that 28 U.S.C. § 1915(d) merely authorizes courts to request attorneys to represent indigent litigants in civil cases and does not permit courts to require such representation); see also Scott v. Tyson Foods, Inc., 943 F.2d 17, 18-19 (8th Cir. 1991) (discussing Mallard).

several factors guiding a district court's decision to appoint counsel including the complexity of the case and the ability of the plaintiff to present his or her case without counsel).

In the instant case, Petitioner has filed a habeas corpus petition, amended his petition, filed a reply, has moved for relief to preclude Respondent from interfering with his access to the court, and has made the present motion to appoint counsel.   This Court is satisfied that Petitioner possessed the capacity to develop and articulate arguments in a meaningful way without the assistance of counsel and that the case is not so complex as to justify appointment of counsel.   In addition, based on these submissions, this Court does not find that Petitioner has been being precluded by the MDOC from seeking legal relief.   Finally, the Court concludes that appointment of counsel is not warranted to assist Petitioner with the charge that he allegedly assaulted a prison officer, as this incident is not part of the present action.   For all of these reasons, Petitioner's motion for appointment of counsel should be denied.

## V.    CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition by a district court unless he is granted a Certificate of Appealability, ("COA").   See 8 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).    In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). In order to make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

Here, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they

have been decided here.  Petitioner has set forth, nor can the Court independently discern, anything in his matter that warrants appellate review.  Therefore, it is recommended that Petitioner should not be granted a COA as it pertains to the Amended Petition.

## VI.  RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Petitioner's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 3] be **DENIED**

2.  Petitioner's request for a hearing be **DENIED**.

3.  Petitioner's Motion Directing the Respondents to Stop Interfering with Petitioner Submitting Legal Documents [Docket No. 10] be **DENIED** as moot;

4.  Petitioner's Motion for Appointment of Counsel [Docket No. 11] be **DENIED**; and

5.  This action be **DISMISSED WITH PREJUDICE**.

6.  It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued.

Dated:     June 27, 2012

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 11, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   A party may respond to the objecting party's brief within fourteen days after service thereof.   All briefs filed under this rule shall be limited to 3500 words.   A judge shall make a de novo determination of those portions of the Report to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.